UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY ALLEN SPINNER,

       Plaintiff,

v.                                   Case No. 1:13-cv-1019
                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which granted in part his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

       Plaintiff was born on January 25, 1985 (AR 184).[1] Plaintiff alleged a disability onset date of July 31, 2009 (AR 184). He completed the 12th grade (attending some special education classes) and hand specialized training as a Licensed certified MIG welder, and had previous employment as a cashier/maintenance worker at a truck stop, a general laborer, a landscaper, a welder, a mover and a mower/laborer (AR 189). Plaintiff identified his disabling conditions as being bipolar and having pain in the shoulder and back (AR 188). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision on June 8, 2012 in he which found that plaintiff was under a disability from July 31, 2009 through November 1, 2011 (AR 24-36). This

---

[1] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

The ALJ found that plaintiff was disabled for a closed period of time. At the first step, the ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2015, and that he had not engaged in substantial gainful activity since the alleged onset date of July 31, 2009 (AR 28). The ALJ made separate findings with respect to plaintiff's medical condition at steps 2, 3, 4 and 5. In his first of findings, the ALJ determined that plaintiff was disabled for the time period of July 31, 2009 through November 1, 2011. In his second set of findings, the ALJ determined that plaintiff was not disabled beginning November 2, 2011 due to medical improvement.

### A. July 31, 2009 through November 1, 2011

At the second step, the ALJ found that from July 31, 2009 through November 1, 2011, "the period during which the claimant was under a disability," plaintiff had severe impairments of: bipolar disorder; attention deficit hyperactivity disorder (ADHD); post traumatic stress disorder (PTSD), polysubstance dependence - in remission; right shoulder tendinopathy of tendon; depressive disorder, NOS; and dysthymic disorder (AR 28). At the third step, the ALJ found that from July 31, 2009 through November 1, 2011, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29).

The ALJ decided at the fourth step that, from July 31, 2009 through November 1, 2011, plaintiff had:

> . . . the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: to lift or carry a

>maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant could walk or stand for six hours and sit for six hours. He was limited to occasional overhead reaching, pushing and pulling with upper right extremity to include the operation of hand levers. The claimant was limited to simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work related decisions, and in general, relatively few work place changes. He needed to avoid all interaction with general public. The claimant was limited to occupations which did not involve the handling, sale or access to alcoholic beverages/access to narcotic drugs, and which are not in the medical field. The claimant's medical condition and psychological symptoms precluded him from working a full-time work schedule. **He was unable to engage in substantial gainful activity from July 31, 2009 through November 1, 2011.**

(AR 30) (emphasis added). In addition, the ALJ found that from July 31, 2009 through November 1, 2011, plaintiff was unable to perform any past relevant work (AR 31).

At the fifth step, the ALJ determined that from July 31, 2009 through November 1, 2011, there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed (AR 31). Accordingly, plaintiff was under a disability, as defined by the Social Security Act, from July 31, 2009 through November 1, 2011 (AR 32).

      **B.     Beginning November 2, 2011**

At step 2, the ALJ found that beginning November 2, 2011, plaintiff still had the severe impairments of: bipolar disorder; ADHD; PTSD; polysubstance dependence - in remission; right shoulder tendinopathy of tendon; depressive disorder, NOS; and dysthymic disorder (AR 32). At the third step, the ALJ found that beginning November 2, 2011, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 32).

The ALJ found that plaintiff's medical improvement occurred as of November 2, 2011, the date his disability ended (AR 33). The ALJ found medical improvement based on the following events:

> On November 1, 2011, the claimant was discharged from Community Mental Health of Clinton Eaton Ingham Counties. It was noted the claimant had stopped using substances. It was stated the claimant and his girlfriend were looking at potential living situations, and he was seriously pursuing employment while considering the possibility of attending college (Exhibit 12F). The claimant did not pursue treatment again until April 2012 (Exhibit 14F).

(AR 33-34). The ALJ found that the medical improvement was related to plaintiff's ability to work because there was an increase in his residual functional capacity (RFC) (AR 34).

> The ALJ decided at the fourth step that:
>
> . . . [B]eginning November 2, 2011, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand for six hours and sit for six hours. The claimant is limited to occasional overhead reaching, pushing and pulling with the upper right extremity to include the operation of hand pedals. He is limited to simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. The claimant must avoid all interaction with the general public. The claimant is limited to occupations which do not involve the handling, sale or access to alcoholic beverages or narcotic drugs, and which are not in the medical field.

(AR 34). Even with his increased RFC, the ALJ found that plaintiff remained unable to perform his past relevant work (AR 35).

At the fifth step, the ALJ determined that beginning November 2, 2011, plaintiff could perform unskilled, light work which existed in the national economy (AR 35-36). Specifically, plaintiff could perform the following work in the regional economy (the State of Michigan): sorter (8,000 jobs); table worker (5,000 jobs); and odd piece checker (4,000 jobs) (AR 35-36). Accordingly, the ALJ determined that plaintiff's disability ended on November 2, 2011 (AR 36).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

> **The Commissioner has failed its burden of establishing the existence of "medical improvement" with substantial evidence.**

Plaintiff contends that the ALJ erred in finding that medical improvement occurred on November 2, 2011. Plaintiff's claim is construed as a "closed period case," i.e., one in which the ALJ determines that the claimant was disabled for a finite period of time that commenced and ended prior to the date of the ALJ's decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). The medical improvement standard applies to closed period cases. "Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity.'" *Niemasz v. Barnhart*, 155 Fed.Appx. 836, 840 (6th Cir. 2005), quoting 42 U.S.C. § 423(f)(1). *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) applies to closed period cases).

"Medical improvement" is defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

7

Here, the ALJ determined that plaintiff's disability ceased on November 2, 2011, the day after he was discharged from the Community Mental Health of Clinton Eaton Ingham Counties ["Community Mental Health"] (AR 34). Before that date, the ALJ found that plaintiff was disabled under the Act. Plaintiff had been treated with medication at the Ingham Community Medical Center since September 2009 for bipolar disorder, depression, chronic right shoulder pain and adult attention deficit disorder (AR 28). In January 2011, plaintiff started treatment at Community Mental Health, where he reported "anger issues, worry, restlessness, limited concentration, low self esteem, depressed mood, poor appetite, sleep disturbance, hopelessness and suicidal thoughts" (AR 28). Treaters noted that plaintiff's general behavior "was guarded, motor activity was agitated, appetite was decreased, speech was pressured, mood was anxious, irritable and depressed, concentration was impaired, and judgment was impaired" (AR 28-29). In March 2011, plaintiff was an inpatient at Bridges Crisis Unit due to thoughts of jumping off a bridge (AR 29). In April 2011, Steve Geiger, Ph.D, performed a consultative examination in which plaintiff reported depressive symptoms, ADHD, mood swings, history of polysubstance abuse, relationship difficulties and three suicide attempts (AR 29). "Dr. Geiger opined the claimant would have difficulty consistently handling work pressure and stress, and would have difficulty consistently and effectively communicating with others (Exhibit 3F)" (AR 30).

In determining that plaintiff's condition had medically improved, the ALJ considered plaintiff's testimony and medical records since his discharge from Community Mental Health on November 1, 2011. The ALJ determined that some of plaintiff's testimony regarding the extent of his limitations was not credible, finding that "[t]he claimant testified he is disabled but has applied

8

for numerous jobs online" (AR 34). In addition, the medical records demonstrated that plaintiff's condition had improved since his discharge:

> The medical records establish the claimant has bipolar disorder, ADHD, PTSD, polysubstance dependence - in remission, right shoulder tendinopathy oftendon, depressive disorder, NOS and dysthymic disorder since November 2, 2011. However, in November 2011 the claimant was seriously pursuing employment while considering the possibility of attending college (Exhibit 12F). The claimant did not receive any medical or psychological treatment from November 2011 to April 2012. The claimant underwent an assessment at Community Mental Health for Central Michigan in April 2012. He reported he had been off his medications for six to seven months. It was reported the claimant had a normal mental status examination. The claimant's diagnoses were bipolar disorder, PTSD and polysubstance dependence, in remission. He was referred for outpatient therapy and psychiatric services (Exhibit 14F). The claimant testified he lives with his pregnant girlfriend and her family. He stated he is actively looking for work and applying for jobs on line. The claimant does not have any psychotic symptoms and does not need a structured living arrangement.

(AR 34-35).

The record reflects that after plaintiff's discharge from Community Mental Health, his impairments had significantly improved and he was able to engage in substantial gainful activity. *See* 42 U.S.C § 423(f)(1). Substantial evidence supports the ALJ's decision that plaintiff experienced medical improvement and that his disability ended November 2, 2011 (AR 33-36). Accordingly, plaintiff's claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated:  September 29, 2014              /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge